The PRESIDENT
delivered the opinion of the Court.
It is objected in this case, that here is an absolute deed, and that no parol proof is to be admitted to contradict it. This is a question important in its consequences, but which, in its full latitude, cannot be admitted either way, as the general rule. That is to say, we cannot determine that it is not to be admitted in any case, or, that it is to be admitted in all cases.
To say that it shall be admitted in no case, would be to overturn all the decisions in which relief has been granted against *deeds, upon the ground of fraud, mistake, oppression or imposition; or that they were made upon a secret trust between the parties. In all which cases, the fact which is the ground of relief, is established by the testimony of witnesses. Of the first class, the books abound with instances which are stated in the case of lord Irnham v. Child. Brow. Ch. Rep. 92. Of the latter there are also many. The case of Gascoin v. Thwing, 1 Vern. 366, is a strong one. A purchases in the name of B, to whom the conveyance is made. A was admitted to prove that he paid the purchase money, so as to make it a resulting trust to himself. So in the case of Hill & wife v. Wiggett, 2 Vern. 547, a surrender of a feme covert, *365 and the admission upon the roll, were of a moiety only of her estate. Yet an entry on the stewards book, and parol proof by the foreman of the jury, were admitted as good evidence to prove that she surrendered the whole.
But ag'ainst the current of authorities is cited the case of lord Irnham v. Child, Brow. Ch. rep. 92. Child as agent for Mr. T/Utterel son of lord Irnham, (but that circumstance not known to the father) treated with lord Irnham for the purchase of an annuity. The terms being settled, it was agreed that the annuity should be redeemable, but both parties consented that it should not be inserted in the grant, on a supposition that it would make the contract usurious and void. The annuity was assigned by Mr. Dutterel to others, and then lord Irnham brought his bill to redeem on the ground of the private agreement. Parol proof was offered to prove it, and in support of its admissibility a string of cases are cited. Does the chancellor overrule their authority ? By no means; he affirms them. Having stated the rule of law, that a deed in writing will admit of no contract that is not part of the deed whether it adds to, or takes, from the contract, he comes to the chancery cases, and sáys, “ It is contended to be the general authority of a court of equity to relieve in cases of fraud, trust, accident or mistake, which applies to agreements as well as to other subjects. This must always clash with the argument drawn from the statute. It is admitted, that if there be no fraud the deed will bind. But objected, that when fraud interferes, there the evidence may be introduced.” Does he overrule the objection in the cases on which it is founded ? On the contrary, he says, “ it is founded on a great deal of wisdom and good sense. But the question is, if it were to be admitted in all cases, whether it would not be subversive of justice: The court have held that it would.”
*He then puts the question of fraud ; if there were proof of that, the rule of evidence would not be subverted in admitting it. Then, the case of mistake ; he says, the court would not overturn the rule of evidence by varying the deed, but that it would be an equity dehors the deed. He then proceeds to state the circumstances of that case, and concludes thus: “I have no idea of this being notice to the assignee of the annuities, that they were redeemable. It is argued several ways ; that they had notice personally ; that they had notice by their agent, and that it was necessary for them to apply to lord Irnham : this might have place, if they were bringing a bill against lord Irnham, hut here it has no place, for the deed was shewn to them by which he conveyed absolutely. I am not able to conceive, that they were obliged to recur to him, any more than if it had been a dormant equity and so dismissed the bill.
I think this case turns principally upon the equity of the assignees, who purchased on the faith of the absolute deed, and would have applied strongly in favor of a purchaser from Mr. Ross without notice. The general principles of the case prove, that parole evidence, when there is a deed, is not to be admitted in all cases, nor refused in all, every case must depend on its own circumstances. In that just noticed, the Chancellor admitted the proofs to be read, to discover if there were ground for relief on a new head of equity, and on the testimony, determined there was not.
The court have the less difficulty in admitting the proofs on the present occasion, since Norvell was suffered to remain in possession of the slaves, two years, as appears from the written papers; and this being contrary to the ordinary effect of a sale, gives an impression of a trust of some kind, between the parties, and admits the introduction of evidence to explain that trust.
The next objection is to the length of time. It is contended that after 20 years, the Chancellor will not admit a redemption of lands, where the mortgagee is in possession,, because by that possession the entry is taken away, and an ejectment barred. From hence it is argued, that, by analogy to this principle, the redemption of mortgaged slaves afterS years would be refused, that being the length of time allowed for commencing an action of detinue or trover.
The first answer to this argument is, that if this were the case of an action of detinue-upon a legal title, it would not be barred by the act of limitations.
*Mr. Johnson proves, that in 1770 or 1772, Mr. Ross acknowledged to him, that Mr. isforvell had a right to redeem, on payment of principal and interest at any time. This acknowledgment of title in Nor-vell, was sufficient to discharge the case from the preceding lapse of time. The tender was in 1778. — Now take both extremes, — the conveyance in 1770, and the tender in 1778, is eight years ; from which deduct the four years disallowed in the computation of lime by the act of 1777, and the party will come within the 5 years. — Again, take one extreme and reject the other, and he will have brought his suit within a time far short of it.
It is laid down in Ud; Ray. 289 that the act of limitations is not to be taken by construction,but the possession must be clearly stated,, to shew a party entitled to it.
But 2dly we doubt, whether the time mentioned in the statute having occurred, is the true rule of barring the redemption. As to lands, 20 years possession takes away the-entry, and of course bars an ejectment. But what then ? It does not bar other remedies to recover the land, since longer periods are allowed to commence various writs of right. It would seem therefore, that this is not the true ground upon which to adopt the rule which has been mentioned.
A more correct principle would seem to be, that after 20 years, a dereliction of the right of redeeming ought to be presumed, as a debt due by bond or even a judgment is presumed paid if that length of time has elapsed without payment of interest, or some acknowledgment which may' *366 repel the presumption. If this be the proper principle, it extends as well to slaves as to lands, and the Court of Chancery adopted that as the rule in the case of Rose and Dade, and allowed a redemption of slaves after five, but within twenty years. This I understood was approved of by the bar.
However, the period of twenty years, tho’ generally fixed upon as that within which a redemption may be permitted, is sometimes departed from, and a redemption allowed upon equitable circumstances, after a much longer time : for
3dly, We are taught by the language of Chancellors, that no time for redemption can be limited. It is a case, not within the act of limitations, because there is a trust supposed between the parties ; and a creditor can never be injured if he gets hi's principal and interest; a debtor may, if he loose his estate at perhaps half its value. Stale • redemptions have however been denied after forty years. — 2 Ventr. 340. *A demurrer was over-ruled as to a mortgage of 60 years old, upon the allegation of an agreement, that the mortgagee should enter and hold ’till he was satisfied, which was compared to. a Welsh mortgage. Vern. 418. However the general rule was 20 years.
In recurring to the principles and nature of mortgages, we are told, they were borrowed from the civil law. They had their pignus, where the pledge was delivered into the possession of the • creditor ; and their hypotheca, where the debtor remained in possession ; but no time for redemption appears in either case to have, been limited. But in the former case, the creditor might bring his actio pignoritia, and in the latter, his actio hypothecaria, and on sentence, he was permitted to sell or use the pledge as his own property answering to our bills of foreclosure.
This is mentioned in answer to the objection, on the part of Mr. Ross, that he was risking the lives of those slaves, whilst he was at the expence of raising and improving the issue of them for another. This risk and inconvenience, he might have put an end to, at any time, by a bill to compel a redemption of foreclosure ; this case is a common one, and in most others, more slaves have been raised, and decreed to be delivered after a much longer time.
The decree must be affirmed, and remitted to the Court of Chancery to have the account of the profits taken, wherein a liberal allowance will no doubt be made, for the expences incurred in improving the slaves, which certainly ought to be done.